UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| **HOLINESS AMISI**, <br><br>        Plaintiff, <br><br> vs. <br><br> **TOM MELICK**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; **SUTRAN**, INC., A SUBSIDIARY OF FIRST TRANSIT OF AMERICA, A DELAWARE CORPORATION; **FIRST TRANSIT OF AMERICA**, **THE CITY OF SIOUX FALLS, SOUTH DAKOTA, PLANNING DEPARTMENT**, AN AGENCY OF THE CITY OF SIOUX FALLS, SOUTH DAKOTA; <br><br>        Defendants. | 4:15-CV-04083-LLP <br><br><br> ORDER ON DEFENDANTS' MOTION TO QUASH <br><br> DOCKET NO. 37 |

## INTRODUCTION

This matter is before the court pursuant to plaintiff Holiness Amisi's complaint pursuant to 42 U.S.C. § 1983 alleging defendants violated her Fourth and Fifth Amendment constitutional rights while acting under color of state law. See Docket No. 1. Ms. Amisi also asserts common law state claims of assault, battery, negligence and negligent infliction of emotional distress pursuant to the court's supplemental jurisdiction. Id. Defendants have filed a motion to quash or in the alternative for a protective order concerning a

subpoena *duces tecum* which Ms. Amisi served on the South Dakota Highway Patrol.  See Docket No. 37.  The presiding district judge, the Honorable Lawrence L. Piersol, referred defendants' motion to this magistrate judge for ruling.  See Docket No. 40.

## FACTS

Ms. Amisi's complaint stems from an incident which occurred on January 15, 2014, involving Ms. Amisi, a minor at the time, and defendant Tom Melick, an employee of defendant SuTran, Inc.  At its most basic, Ms. Amisi alleges Melick used excessive force in breaking up a physical altercation of which Ms. Amisi alleges she was the victim.

Prior to working for SuTran, Melick was employed by the South Dakota Highway Patrol from 1985 until 2002.  In between the Highway Patrol employment and Melick's employment with SuTran, he held various jobs in sales, repossession, serving process, driving bus, and in security.  Dates for these other jobs were not given.  SuTran did not request or receive Melick's personnel file from the Highway Patrol at the time it hired Melick.

Last fall, Ms. Amisi served a subpoena *duces tecum* on the Highway Patrol seeking a copy of Melick's personnel file from his time as an employee of that entity.  Defendants objected and filed a motion to quash.  See Docket No. 16.  The parties reached a mutual agreement concerning that subpoena and defendants' motion, so the court denied the motion as moot.  See Docket No. 24.  Defendants agreed to provide Ms. Amisi with a copy of Melick's application

for employment with the Highway Patrol and with the civil and criminal case numbers of some litigation Melick had been involved in.  See Docket No. 38-4.

After receiving this information, Ms. Amisi served defendants with a request for the production of Melick's Highway Patrol personnel file.  See Docket Nos. 38-2, 38-3.  Defendants agreed to produce certain (unspecified) records from that file, but not the entirety of the file.  See Docket No. 38, p. 2, ¶ 6.

On April 7, 2016, Ms. Amisi again served the Highway Patrol with a subpoena *duces tecum* seeking Melick's personnel file.  See Docket No. 38-1.  The subpoena seeks "a complete and comprehensive copy of the personnel records of Trooper Tom Melick.  The response to this subpoena shall include but is not limited to any reports and records of all internal investigations of the conduct of Trooper Melick, whether on or off duty, any record concerning the discharge of Trooper Melick's service weapon whether on or off duty, counseling referrals, psychological or psychosocial exams, tests [sic] results or reports, including examiner's notes, any other disciplinary or human resources investigation materials on file."  Id.

Defendants now move to quash the April 7 subpoena *duces tecum*. Defendants argue that the information sought is too remote in time from the incident forming the basis of Ms. Amisi's claims to be relevant.  Defendants also argue that the information sought is not reasonably calculated to lead to the discovery of admissible evidence and that the request is overly broad. Defendants also argue Ms. Amisi is estopped from seeking a copy of Merick's

3

Highway Patrol personnel file because on two prior occasions she entered into agreements to accept less than the complete file.  Finally, defendants argue the subpoena seeks only to annoy and embarrass Melick and, for that reason, is improper.

The South Dakota Highway Patrol filed a response indicating it supports defendants' motion to quash, but will abide by any order the court may enter as to the subpoena.  The Highway Patrol points out that employee personnel files are protected as confidential under state law.

Ms. Amisi notes that her negligence claims against SuTran and the City of Sioux Falls center around those entities' failure to properly hire, train, and supervise Melick.  Thus, Ms. Amisi asserts the information in Melick's personnel file may be relevant if it shows facts which indicate Melick was an inappropriate candidate for the position the other defendants hired him to hold.  It may also be relevant as to whether Melick required special training or supervision before being allowed to carry out his job duties for the other defendants.  Ms. Amisi believes the requested documents may show Melick discharged his service revolver to shoot his neighbor's dog and that the Highway Patrol fired Melick or asked him to resign for improper actions on his part.  Ms. Amisi asserts that any concerns as to confidentiality are assuaged by the protective order entered in this case.

The parties in this case stipulated to the entry of a protective order in this case.  See Docket Nos. 29 and 32.  Under the terms of that order, "confidential information" is defined as including specifically "any document in

Defendant Tom Melick's personnel file from the South Dakota Highway Patrol." See Docket No. 29 at p.2, ¶ 3. In the stipulation, the parties agree that confidential information will only be used for the purposes of this litigation. Id. at ¶ 2. Confidential information may be produced only to counsel of record for the parties, attorneys appearing in or working on this litigation, including regular and temporary employees, contractors and agents; experts or consultants hired to assist in the preparation of this case by any attorney in the case; photocopying, graphic production services, computer services, or litigation support services hired by the parties or their counsel to assist in the litigation; parties' employees (current and former) and agents for purposes related to this litigation; the court and its staff; and any other person to whom the court authorizes disclosure. Id. at pp. 2-3, ¶4.

Under the protective order, if confidential information is disclosed to any person, that person must be told the information is confidential and they must sign an acknowledgement that they have been given a copy of the protective order and agree to abide by its terms. Id. at p. 3, ¶5. Inadvertent disclosure of confidential information, including material protected by the attorney-client privilege and the work-product doctrine, does not waive confidentiality. Id. at ¶¶6, 7.

Confidential information submitted to the court must be filed under seal. Id. at p. 4, ¶8. Any party may designate material as confidential information. Id. at p. 5, ¶10. If the other party disputes the designation, the disputing party must file a motion with the court and seek the court's determination of

5

confidentiality.  Id.  The producing party need not produce the document until the court resolves the issue.  Id.

At the end of this litigation, all confidential materials must be destroyed or returned to the producing party.  Id. at ¶11.  The receiving party must certify to the producing party that the materials were either destroyed or returned.  Id.  The protective party allows any party to seek even more protections for confidential information should that be necessary.  Id. at p. 5, ¶ 14.

## DISCUSSION

**A.   Standards Applicable to Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)   *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the

>>requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.
>
>(C) *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>>(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>>(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>>(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See FED. R. CIV. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

>When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
>>(i) expressly make the claim; and
>>
>>(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good

faith effort to resolve the dispute by conferring first with the other party.  See Fed. R. Civ. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v.

8

Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. See FED. R. CIV. P. 26(b)(1). Additionally, the court may limit the frequency and extent of discovery. See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Rule 45 governs the use of subpoenas directed to non-parties. See FED. R. CIV. P. 45. A subpoena *duces tecum* is the proper method for obtaining documents from a non-party. See FED. R. CIV. P. 45(a)(1)(C). A district court where compliance with the subpoena is required *must* quash or modify a subpoena that requires disclosure of privileged or other protected matter if no exception or waiver applies. See FED. R. CIV. P. 45(d)(3)(A)(iii). If the subpoena

9

requires the disclosure of a trade secret or other confidential research, development, or commercial information, the court *may* quash or modify the subpoena.  See FED. R. CIV. P. 45(d)(3)(B)(i).

**B.     Substantive Law Applicable to Ms. Amisi's Claims**

In order to show a *prima facie* case under 42 U.S.C. § 1983, Ms. Amisi must show (1) defendants acted under color of state law and (2) " 'the alleged wrongful conduct deprived her of a constitutionally protected federal right.' " Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (quoting Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009)).  Local governmental entities can only be held liable under § 1983 to the extent the constitutional deprivation was made pursuant to official policy or custom of the city, county or other local governmental unit.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 689-90 (1978).

To prove her negligence claim, Ms. Amisi must show the defendant in question owed her a duty, the duty was breached, and the breach of duty was the proximate and factual cause of her damages.  Johnson v. Hayman & Assocc., Inc., 867 N.W.2d 698, 702 (S.D. 2015).  Negligent infliction of emotional distress requires proof that defendants acted negligently, Ms. Amisi suffered emotional distress as a result of the negligence, and that her emotional distress caused physical manifestations.  Reynolds v. Ethicon Endo-Surgery, Inc., 454 F.3d 868, 874 (8th Cir. 2006).

To prove her assault claim, Ms. Amisi must show the defendant intended to cause a harmful or offensive contact with her or a third person, or intended

to cause an imminent apprehension of such a contact and that an offensive contact with her directly or indirectly resulted.  Reeves v. Reiman, 523 N.W.2d 78, 82 (S.D. 1994).  Ms. Amisi need not show the defendant had a "specific intent or design to cause the contact or to cause any singular and intended harm.  What is forbidden is the intent to bring about the result which invades another's interests in a manner that the law forbids." Id.  A battery requires Ms. Amisi to show defendant touched her in an offensive manner.  Id.

**C.    Defendants' Objections**

   **1.    Relevance and Admissibility of Evidence**

Defendants argue that defendant Melick's employment with the Highway Patrol was too remote in time to be relevant to the issues in Ms. Amisi's case. Defendants rely on Bond v. Utreras, 2006 WL 695447 at **8-9 (N.D. Ill. 2006).

In Bond, the defendants moved to quash subpoenas directed to prior employers of two defendants. Id.  Defendants argued that the evidence plaintiff was seeking was "bad acts" evidence not admissible at trial under FED. R. EVID. 404(b)[1] and that the evidence was unrelated to the allegations in plaintiff's suit. Id.  Finally, defendants argued that the employment files, comprising a period from six to thirteen years before, were too remote in time to be relevant.  Id. The court held the plaintiff correctly posited the law that bad acts evidence may

---

[1] Rule 404(b) provides in pertinent part:

> (1) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

11

be admissible to show motive, intent, absence of mistake, opportunity, preparation and plan.  Id.  Also, the court held plaintiff correctly stated the law that remoteness in time was but one factor of many to consider in determining whether to allow the discovery.  Id.  Ultimately, the court quashed the subpoena.  Id.  Among the reasons cited by the court, aside from the remoteness, was the fact that plaintiff had not alleged that either of the defendants were previously disciplined by their prior employers for engaging in conduct similar to what was alleged in the plaintiff's complaint.  Id.  Without any such allegation or suggestion by plaintiff, the court concluded the subpoenas amounted to a fishing expedition.  Id.

Here, none of the parties explicitly explain to the court what the nature of defendant Melick's prior employment with the Highway Patrol involved.  Apparently, there was misconduct involving discharge of his service firearm, there was a civil case against him and a criminal case against him which has been sealed, and Melick either resigned or was fired, though whether that was related to the conduct involving discharge of the firearm is not clear.  See Docket No. 38-2 at p. 2, Request for Production Nos. 1-2.  Also, Ms. Amisi alleges defendant Melick misrepresented his training regarding conflict resolution.

These allegations from Ms. Amisi serve to distinguish this case from Bond.  Here, Ms. Amisi has alleged concrete evidence of misconduct which she believes will be found in defendant Melick's personnel file with the Highway Patrol.  The evidence is old, but neither party informs the court when

defendant Melick began his employment with SuTran. He could have begun employment with SuTran as early as 2002, or as late as 2014. If closer to the former date, the evidence could be highly relevant to whether SuTran was negligent in hiring, training, or supervising Melick.

Defendants assert that the Highway Patrol would not have released Melick's personnel records to SuTran if SuTran had asked for them. That is certainly true, but if Melick had signed a waiver allowing SuTran to conduct a background check and gather records—as is customary these days when one is seeking employment—presumably the Highway Patrol *would* have released the documents. And that is the point of Ms. Amisi's negligence claim against SuTran—that it failed to conduct due diligence in hiring, training and supervising Melick.

Defendants argue that the precise issue in this case is whether Melick used excessive force against Ms. Amisi on January 15, 2014, and whether he used excessive force, or discharged his firearm inappropriately, when previously employed by the Highway Patrol is simply not relevant to Ms. Amisi's excessive force claim. Maybe. But that argument ignores the several other claims Ms. Amisi has asserted in this case separate and apart from her § 1983 claim.

Although the court expresses no opinion as to whether this evidence will be admissible at a trial, as the Bond opinion shows, there are competing arguments both for and against admissibility. In any event, the rules of discovery do not require that the evidence sought in discovery be admissible.

See FED. R. CIV. P. 26(b)(1).  Ms. Amisi has shown the required relevance of the documents she seeks.

### 2. Overly Broad

Next, defendants argue the subpoena is "overly broad" and should be quashed for that reason.  "Overly broad" does not appear in Rule 45(d)(3) as a ground whereby a court "must" or "may" quash a subpoena.  Instead, Rule 45 allows the quashing of a subpoena if complying with it is "unduly burdensome."  See FED. R. CIV. P. 45(d)(3)(A)(iv).

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive.  Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had.  Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise

appropriate.  See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and Burns, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection).  Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.  See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960)and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

     Neither defendants nor the Highway Patrol establish grounds for quashing the subpoena on the basis of undue burden.  Neither has alleged that the subpoena will require the production of thousands of pages of documents or that it will require excessive man hours to compile and copy.

To the extent that "overbreadth" is a proper objection to a subpoena *duces tecum*, the court obliges defendants. The Highway Patrol need not produce records from defendant Melick's personnel file that are directly related to health care insurance, life insurance, retirement benefits, I-9 and W-2 forms. If any other documents of questionable relevance are contained in Melick's file, the Highway Patrol may withhold those documents and file a privilege log with Ms. Amisi describing with sufficient particularity what documents are being withheld and why. See FED. R. CIV. P. 26(b)(5)(A).

### 3. Annoyance and Embarrassment

Next, defendants argue Ms. Amisi seeks the information described in the subpoena simply to annoy and embarrass defendant Melick. "Annoyance" and "embarrassment" do not appear in Rule 45(d)(3) as grounds whereby a court "must" or "may" quash a subpoena. Instead, Rule 45 allows the quashing of a subpoena if complying with it is "unduly burdensome," as discussed above, or if it calls for disclosure of privileged or "other protected matter if no exception or waiver applies." See FED. R. CIV. P. 45(d)(3)(A)(iv).

Here, the information in Melick's Highway Patrol personnel file is unquestionably sensitive and otherwise confidential information. But Rule 45 does not require the court to quash the subpoena simply because that is the case. Instead, the court may "modify" the subpoena. In addition, the court need not quash the subpoena if an exception or waiver applies. Here, there is in place a comprehensive protective order that specifically protects confidential documents from Melick's personnel file. See Docket Nos. 29 & 32. Defendants

16

do not explain why that extremely comprehensive protective order does not sufficiently protect the documents from Melick's personnel file. The court finds, under these circumstances, that quashing is not necessary due to the sensitive nature of the material. That issue has already been addressed by the entry of a protective order.

### 4. Estoppel

Finally, defendants argue that Ms. Amisi entered into an agreement to accept only those documents defendants chose to give her as the appropriate discovery from Melick's personnel file. They argue that she is, therefore, estopped from now seeking broader discovery. Defendants rely on <u>Mawulawde v. Bd. of Regents of University Sys. of Ga.</u>, 2007 WL 2460774 at **8-9 (S.D. Ga. 2007).

The <u>Mawulawde</u> case involved allegations of discriminatory hiring at a college's department of surgery. <u>Id.</u> at *4. The parties themselves entered into an explicit agreement limiting discovery of doctors similarly-situated to the plaintiff to the department of surgery. <u>Id.</u> Then, long after discovery had closed, the plaintiff sought to obtain discovery outside the scope of the department of surgery to include physicians from numerous other departments. <u>Id.</u> at **8-9. The court declined to reopen discovery and declined to set aside the parties' own self-imposed limitation on the scope of discovery. <u>Id.</u>

Here, defendants have provided a copy of an email string that they assert shows the agreement:

17

>[from defendant's attorney to Ms. Amisi's attorney]
>
>October 8, 2015
>
>This email is intended to confirm our conversation from this morning. I have agreed to withdraw the recently-filed Motion to Quash Subpoena concerning the subpoena you served on the SD Highway Patrol [last fall] seeking Tom Melick's personnel file, provided that you withdraw said subpoena. Bob Anderson, the attorney representing the SD Highway Patrol for purposes of your subpoena and who is CC'd hereto, has agreed to provide me Melick's job application for when he applied with the SD Highway Patrol. I will pass that application on to you once I receive it. You will also be provided the docket/case numbers for the criminal and civil actions brought against Melick referenced in his answer to Interrogatory no. 13. Please confirm that this is the agreement we reached regarding this dispute concerning the above-referenced subpoena.
>
>[response from Ms. Amisi's attorney to defendants' attorney]
>
>The e mail is accurate. Mr. Anderson. I withdraw the subpoena for SDHW PATROL RECORD FOR MR MELICK, is this sufficient withdraw? ADVISE OK?
>
>See Docket No. 38-4.

Of course, after this information was provided, Ms. Amisi apparently found that the criminal case, the docket number for which defendants provided, was sealed. See Docket No. 38-2, p. 2, Request for Production No. 1 (seeking "[a]ll letters, records or documents which contain information about Melick's sealed criminal court file."). The court finds that the email exchange above was an agreement to settle the dispute as to the subpoena *duces tecum* served on the Highway Patrol in the fall of 2015. The agreement went no further than that. Ms. Amisi honored her part of the bargain—she withdrew the fall 2015 subpoena. At no place in the email is there an explicit or implicit promise that Ms. Amisi would accept, for all time, the information defendants

18

were offering her, sight unseen, as the sum total of the discovery she would pursue as to Melick's employment history with the Highway Patrol.

Likewise, when Ms. Amisi served defendants with requests for documents that called for the production of defendant Melick's Highway Patrol personnel file, defendants provided some additional documents. Defendants point to no statement from Ms. Amisi or her counsel at this later time that they allege constitutes an agreement to limit discovery for all time. In fact, defendants do not place before the court any of the conversations occurring between counsel on the occasion of these subsequent discovery requests.

No doubt Ms. Amisi withdrew her fall 2015 subpoena because the compromise offered by defendants promised to give her direct access to Melick's court files by giving her the docket numbers to those files. That turned out not to be the case because at least one of those court files was sealed. Nothing stated by Ms. Amisi's counsel precluded her from continuing to pursue the documents when the discovery provided turned out to be unsatisfactory and unavailing.

## CONCLUSION

Based on the foregoing law, facts and analysis contained in the body of this opinion, it is hereby

ORDERED that defendants' motion to quash [Docket No. 37] is denied.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 3rd day of June, 2016.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge