UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
MAY 0 8 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| HOLINESS AMISI,<br><br>Plaintiff,<br><br>vs.<br><br>TOM MELICK, in his individual and official capacity, SUTRAN, INC., a subsidiary of FIRST TRANSIT OF AMERICA, a Delaware Corporation, FIRST TRANSIT OF AMERICA, and THE CITY OF SIOUX FALLS, SOUTH DAKOTA, PLANNING DEPARTMENT, an agency of THE CITY OF SIOUX FALLS, SOUTH DAKOTA,<br><br>Defendants, | CIV 15-4083<br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Defendant Tom Melick ("Melick") and The City of Sioux Falls, South Dakota, Planning Department's ("the City") motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on claims arising under 42 U.S.C. § 1983, and Defendant First Transit of America's[1] ("First Transit") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) dismissing all claims. The Court has considered all filings on record and for the following reasons, Melick and the City's motion for

---

[1] In the caption of her Complaint, Plaintiff misidentifies Defendant First Transit, Inc. as First Transit of America. *See* Doc. 1; *see also* Doc. 53-1 (Contract). However, in the body of the Complaint, Plaintiff refers to both First Transit, Inc. and First Transit of America. *See* Doc. 1 at ¶¶ 3-4. First Transit filed a timely Answer wherein it noted the misidentification. *See* Doc. 8 at ¶ 5 (emphasis added) (5. Defendants admit the allegations in paragraph 3 of Plaintiff's Complaint *except Sutran, Inc., is a wholly owned subsidiary of First Transit, Inc.*). Plaintiff did not file a motion to amend the Complaint. Normally, a court will allow a plaintiff to file an amended complaint correcting the misidentification error and the amended complaint will "relate back" to the filing of the original complaint for purposes of statutes of limitations. *See Roberts v. Michaels*, 219 F.3d 775, 777 (8th Cir. 2000) ("This misnomer principle is most obviously appropriate in cases where the plaintiff has sued a corporation but misnamed it.").

1

partial summary judgment is granted, and First Transit's motion for judgment on the pleadings is also granted.

## I. FACTUAL BACKGROUND

The following facts are undisputed or viewed in the light most favorable to the Plaintiff, the non-moving party:

The City contracts with First Transit to manage and operate the public transit system in Sioux Falls, South Dakota. Pursuant to that contract, SuTran, Inc. ("SuTran"), a wholly-owned subsidiary of First Transit, employs all personnel necessary for the operation of the transit system. SuTran assumes the employment, labor, and other contractual obligations necessary for the operation of the transit system, which includes, but is not limited to, managing safety and security.

Melick is trained, employed, and supervised by SuTran as a Road Supervisor. SuTran developed and defined Melick's duties, roles, and responsibilities. Melick does not hold any special license or other authorization from the City or the State as it relates to his job responsibilities. As a Road Supervisor, Melick is responsible for "[s]upervis[ing] the internal aspects of the delivery of public transportation services including, accident reporting, attendance tracking and customer service, in order to ensure safe and efficient operations, schedule reliability, and service quality."[2] In January of 2014, Melick was stationed at the bus stop on 120 E. 11th Street, Sioux Falls, South Dakota (the "bus stop").

On January 15, 2014, Plaintiff Holiness Amisi ("Amisi") was at the bus stop. At approximately 3:42 p.m., while in the lobby of the bus stop, Amisi became involved in a physical altercation with another female patron. The altercation continued until about 3:44 p.m., when Melick intervened and told the two women to stop fighting and leave the lobby. Both women complied. Amisi then reentered the lobby to retrieve her backpack and coat. Melick again asked her to leave, which she did.

While outside, a second physical altercation ensued between Amisi and the female patron. During this altercation, Amisi's hair was pulled and she was punched in the face causing her to fall to the ground. After regaining her balance, Amisi removed her coat and backpack, approached the other female, and threw a punch. Immediately thereafter, Melick grabbed Amisi, threw her to the ground, and called her a "black bitch." Melick restrained her on the ground for

---

[2] *See* Doc. 53-2 (Job Description).

approximately forty seconds. While restrained, Amisi continuously resisted Melick by kicking her legs and flailing her arms. Once off the ground, Amisi quickly separated herself from Melick and walked away.

When questioned about the incident, Melick explained that he broke up the fight "for the safety of [Amisi], the other person in the fight, and the people around . . . the bus stop." Other than providing safe and secure public transportation, neither SuTran nor the City had specific policies, rules, or regulations detailing how to handle a physical altercation or authorizing Melick to use force while performing his job responsibilities. Prior to this incident, there was not a continuing, widespread, or persistent pattern of excessive force used by SuTran employees.

On April 22, 2015, Amisi filed an eight-count Complaint against Defendants alleging violations of her constitutional rights, assault and battery, negligent infliction of emotional distress, and negligent supervision. On February 10, 2017, Defendants' moved for partial summary judgment on claims arising under 42 U.S.C. § 1983, and Defendant First Transit moved for judgment on the pleadings dismissing all claims.[3]

## II. LEGAL STANDARD—SUMMARY JUDGMENT

Pursuant to Rule 56(a) of the Federal Rule of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party asserting that a fact cannot be . . . disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" FED. R. CIV. P. 56(c)(1)(A)-(B). "The movant can also establish the absence of a disputed material fact by showing 'that an adverse party cannot produce admissible evidence to support the fact.'" *Jensen v. Hy-Vee Corp.*, 2011 WL 1832997, at *1 (D.S.D. May 13, 2011) (quoting FED. R. CIV. P. 56(c)(1)(B)).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once this burden is met, the burden then shifts to the non-moving party. The non-

---

[3] Count I: 42 U.S.C. § 1983—5th and 14th Amendment (against Melick); Count II: 42 U.S.C. § 1983—4th and 14th Amendment (against Melick); Count III: 42 U.S.C. § 1983—*Monell* Claim (against the City); Count IV: South Dakota Common Law Assault and Battery (against Melick); Count V: Assault and Battery Respondent Superior (against SuTran, Inc.); Count VI: South Dakota Common Law Negligent Infliction of Emotional Distress (against Melick); Count VII: Negligent Infliction of Emotional Distress Respondent Superior (against SuTran, Inc.); Count VIII: Negligent Supervision (against SuTran, Inc.).

3

moving must demonstrate "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A)-(B). The non-moving party may not rest on "mere allegations or denials . . . ." *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

"For purposes of summary judgment, the facts, and inferences drawn from those facts, are 'viewed in the light most favorable to the party opposing the motion.'" *Jensen*, 2011 WL 1832997, at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. DISCUSSION

Amisi alleges 42 U.S.C. § 1983 claims against Melick (Counts I and II) and the City (Count III). The Court will take up these claims in order.

*A. Amisi's § 1983 claims against Melick—Counts I and II*

Amisi asserts that Melick violated her constitutional rights under 42 U.S.C. § 1983 when he used force to throw her to the ground and restrain her at the bus stop.

Section 1 of the Fourteenth Amendment to the United States Constitution provides, in part,

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. Because the Fourteenth Amendment is applicable to the States, it can be violated only by conduct that is characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923–24 (1982). In order to enforce the Fourteenth Amendment, Congress enacted Title 42 U.S.C. § 1983, which prohibits interference with federal rights under color of state law. Section 1983 provides, in part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966); *see also Lugar*, 457 U.S. at 929 (finding that "it is clear that in a § 1983 action . . . the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical."). To prevail under § 1983, a plaintiff must show that they have been deprived of a constitutional right by a "state actor" or a person acting "under color of state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). The Court will first analyze the "state action" requirement.

1. State action

In determining whether there was state action or the defendant was acting "under color of state law" for purpose of § 1983, the defendant must exercise power "'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Roe*, 128 F.3d at 1215 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Thus, "'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Roe*, 128 F.3d at 1215 (quoting *West*, 487 U.S. at 49-50). Here, it is undisputed that Melick is trained, employed, and supervised by SuTran, a private corporation. Thus, Melick is a private employee, not a public employee or state actor. This is not the end of the Court's inquiry, however.

Case law demonstrates that a private individual or entity may be regarded as a state actor or acting "under color of state law" under proper circumstances. *See Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) ("The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor[.]"); *see also Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253–54 (1st Cir. 1996) ("[P]rivate actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983."); *but see Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (quoting *Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 421 (8th Cir.2007)) (finding that "'merely private conduct, no matter how discriminatory or wrongful[,]'" is still excluded under § 1983). To determine this, the Court must analyze whether the alleged infringement was "fairly attributable to the State." *Wickersham*, 481 F.3d at 597 (quoting *Lugar*, 457 U.S. at 937). Case law reflects a two-prong approach to "fair attribution." *Lugar*, 457 U.S. at 937.

5

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Id.* Resolving this inquiry requires the Court to do a case-by-case analysis because deciding "[w]hat conduct is fairly attributable [to the State] is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) (further finding that "no one fact can function as a necessary condition across the board . . . ; nor is any set of circumstances absolutely sufficient . . . ."); *see also Wickersham*, 481 F.3d at 597 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)) ("Our ultimate conclusion must turn on the particular facts of the case, since '[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.'"); *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (citations omitted) ("Resolving this question entails a journey down a particularly fact-bound path[.]").

In the present case, Melick is a private employee under the employ of SuTran, a wholly-owned, private corporation of First Transit. Thus, for him to be liable under § 1983, the conduct at issue must be "fairly attributable" to the State in that his actions must have (i) "resulted from the exercise of a right or privilege having its source in state authority[,]" and he (ii) "must be a person who may fairly be said to be a state actor." *See Lugar*, 457 U.S. at 937-39.

i. **Melick's action were not caused by the exercise of a right of privilege having its source in state authority**

Amisi argues that both the contract entered into between the City and First Transit, and SDCL 13-32-2,[4] acted as sources of authority thus exposing Melick to § 1983 liability. Doc. 1 at 2 ("MELICK also acted under color of law by virtue of SDCL 13-32-2 . . . ."); Doc. 54 at 6 ("First Transit/SuTran only have the ability to operate the City-owned bus station by way of Contract. The city charges the[m] with providing safety and security as the City has the duty to

---

[4] SDCL 13-32-2 provides,
> Superintendents, principals, supervisors, and teachers and their aids and assistants, have the authority, to use the physical force that is reasonable and necessary for supervisory control over students. Like authority over students is given any person delegated to supervise children who have been authorized to attend a school function away from their school premises and to school bus drivers while students are riding, boarding, or leaving the buses.

6

provide the same."). The portion of the contract that Amisi refers to is at paragraph 3, **Scope of Services of First Transit**, which provides, in part:

> First Transit will furnish management services . . . . The management to be furnished includes, but shall not be limited to: assisting the City in carrying out the function of transit planning, marketing, real estate management, equipment and building utilization and maintenance, <u>security</u>, routes, scheduling, dispatching, fares, service standards, purchasing, accounting needs in conjunction with the City's Accounting and Budgeting/Purchasing Division, budgeting, <u>safety</u>, insurance and claims, employee selection and training per City guidelines, labor negotiations . . . public relations, equipment selection, make recommendations regarding capital purchases, Annual Customer Service Audit and Annual Route Performance Evaluation and all other normal managerial functions reasonably required in the day-to-day operations of the Transit System, including Paratransit services.

Doc. 53-1 at 1-2 (emphasis added).[5]

Under well-established § 1983 principles, the fact that a private entity either contracts with a state or performs a public function, does not make the conduct at issue "state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982); *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974) (finding that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action in that of the State for purposes of the Fourteenth Amendment."); *Occhino v. Northwestern Bell Tel. Co.*, 675 F.2d 220 (8th Cir. 1982) (finding that a telephone company, which merely enforced its own rules and regulations in terminating customer's telephone service after receiving complaints that customer had been placing abusive and profane telephone calls, did not act under color of state law in disconnecting customer's telephone service and thus customer could not recover under section 1983 for termination of his telephone service); *Banks v. Fedierspiel*, 2011 WL 1325046, at *5 (E.D. Ky. Apr. 1, 2011) (holding that private towing companies with whom municipalities contract to tow and impound cars do not become state actors by performing their public contracts). Rather, a court must analyze whether the function performed has been "'traditionally the exclusive prerogative of the State.'" *Id.* (quoting *Jackson*, 419 U.S. at 352).

Under this "public function" test, courts have been reluctant to expand the number activities that fall within the purview of § 1983. *See, e.g., Jackson*, 419 U.S. 345 at 353; *Rendell-Baker*, 457 U.S. at 842; *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982); *Flagg Bros. v.*

---

[5]An amendment to paragraph 20, **Employer Status**, confers upon SuTran "all labor and other contractual obligations necessary for the operation of the Transit System." Doc. 53-1 at 13.

*Brooks*, 436 U.S. 149 (1978); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *see also Santiago v. Puerto Rico*, 655 F.3d 61, 69 (1st Cir. 2011) (finding that "[t]he activities that have been held to fall within the state's exclusive preserve for purposes of the public function test are few and far between."). Most notably, courts have held that mass transportation did not meet the "public function" test. *See Black by Black v. Ind. Area School Dist.*, 985 F.2d 707 (3rd Cir. 1993) (discussed *infra*); *Santiago*, 655 F.3d at 69 (discussed *infra*); *see also Mineo v. Transp. Mgmt. of Tenn., Inc.*, 694 F. Supp. 417, 424-25 (M.D. Tenn. 1988) (finding that "[i]n this case there was no state action under [the public function] test because providing mass transit services is not an 'exclusive prerogative' of the City of Nashville."); *Arredondo v. Laredo Mun. Transit Sys.*, 581 F. Supp. 868, 870 (S.D. Tex. 1984) (mass transit).

In *Black by Black*, plaintiff schoolchildren brought § 1983 claims against the bus driver and bus company after alleging that they were sexually molested by the bus driver. *Black by Black*, 985 F.2d at 708. The bus company was a private entity that was under contract with the school district to provide transportation to and from school. *Id.* at 708-09. The district court granted defendants' motion for summary judgment, holding that the driver and bus company were not "state actors." *Id.* On appeal, the Third Circuit affirmed and found that the positions of the bus company and their employees were "indistinguishable from the positions of [the school] and [the] employees in *Rendell-Baker* [where the Court had held that a private institution paid for by a state to educate maladjusted high school students was not a state actor]." *Id.* at 710. Thus, while the bus company and its employees were "carrying out a state program at state expense, they were not performing a function that has been 'traditionally the exclusive prerogative of the state' . . . ." *Id.* at 710-11.

Similarly, in *Santiago*, plaintiff, the mother of a special needs student, brought a § 1983 claim against defendants, a private bus company and its proprietors, after learning that her son was sexually abused by the bus driver. *Santiago*, 655 F.3d at 66. Defendants then filed a motion for summary judgment arguing that they were not "state actors" for purposes of § 1983. *Id.* at 67. The district court granted the motion. *Id.* On appeal, plaintiff argued that the defendants assumed a traditional state responsibility of providing public school transportation and could therefore be sued under § 1983. *Id.* at 69. The First Circuit disagreed. *Id.* In affirming the finding of the district court, the First Circuit likened the facts of the present case to the Supreme Court's opinion in *Rendell-Baker*. *Id.* Based on this holding, then, the First Circuit opined that

"[i]f the education of children does not itself fall within the narrow range of exclusive state functions, it is hard to imagine how a service ancillary to education . . . would qualify." *Id.*

In the present case, the contract between the City and First Transit does not confer § 1983 liability on Melick. As case law demonstrates, the mere fact that a private individual or entity contracts with a city or state to provide a public function does not transform that conduct into state action. *See Rendell-Baker*, 457 U.S. at 842 ("That a private entity performs a function which serves the public does not make its acts state action."). The rule suggested by Amisi—that a person who contracts with the state could be held liable under section 1983—thus runs contrary to both case law and the intent of the statute. Rather, courts have observed a careful adherence to the state action requirement, thereby limiting the reach of federal law. *See Lugar*, 457 U.S. at 936-37. Further, the circumstances in the present case are similar to those in both *Black by Black* and *Santiago*, where the court in both cases found that the defendants were not providing services "traditionally the exclusive prerogative of the state," and thus no state action. Here, Melick was providing public transportation services pursuant to his employment contract with SuTran, a private corporation. Melick's actions against Amisi were being performed pursuant to his responsibilities as a Road Supervisor, to provide, among other things, safety and security at the bus stop. This alone does not confer § 1983 liability on Melick.

Additionally, in her Complaint, Amisi also cites SDCL 13-32-2 as a source of authority. SDCL 13-32-2 applies to "[s]uperintendents, principals, supervisors, and teachers and their aids and assistants . . . ." Melick does not fit into any of those categories. As such, Amisi's reliance on SDCL 13-32-2 is misplaced and does not transform Melick's conduct into state action.

### ii. Melick cannot fairly be said to be a state actor

Additionally, Melick cannot fairly be said to be a state actor. In both her Complaint and response in opposition, Amisi argues that Melick was endowed with plenary police authority because the contract between the City and First Transit required First Transit/SuTran to provide safety and security at the bus stop. *See* Doc. 1 at ¶ 4 ("MELICK, as part of Sutran, Inc. staff provided police like supervisory function traditionally reserved to the CITY."); Doc. 54 at 7 (emphasis added) ("[I]f the City did not contract with First Transit/SuTran, the City would perform the exact same duty in *policing* the bus station just as Melick did."); Doc. 55 at 3 (10. Melick has not been endowed with plenary police authority. (Melick Aff. ¶ 4;Trebilcock ¶ 4.). **RESPONSE**: Deny. The Contract requires First Transit/SuTran the duty for safety and security.

9

First Transit/SuTran has not identified anyone else assigned to carry out these duties on January 15, 2014 other than Melick.).

Federal circuit courts have consistently held that police-like conduct of private security guards is not automatically transformed into state action. *See Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003). For example, in *Wade v. Byles*, 83 F.3d 902 (7th Cir.1996), the Seventh Circuit addressed whether Byles, a private citizen employed by a private company to provide security, was a state actor when he shot Wade. *Id.* In *Wade*, Byles shot Wade when he attempted to pass through a security checkpoint of a residential building. *Id.* at 903. Wade brought a § 1983 claim against Byles and his employer, a private security company. *Id.* The district court granted summary judgment in favor of defendants. *Id.* Wade appealed. *Id.* On appeal, Wade argued that Byles' duties as a security guard were an extension of police powers and because police powers are traditionally exclusively reserved to the states, Byles was a state actor. Id. at 905. The Seventh Circuit disagreed. *Id.* at 905-06. In affirming the decision of the district court, the Seventh Circuit held that even though Byles performed services on public property, for the public's benefits, and was authorized to carry a handgun, arrest people for criminal trespass, and use deadly force in self-defense, "none ha[ve] been exclusively reserved to the police[,]" and thus Wade did not meet the requirements of § 1983. *Id.* at 906.

Further, in *White v. Scrivner Corp.*, 594 F.2d 140, 142-43 (5th Cir. 1979), the Fifth Circuit held that the acts of an assistant manager in detaining a store patron suspected of stealing is not an action exclusively associated with the state. Id. In justifying its holding, the Fifth Circuit found that,

> Defendants' search of plaintiffs' purses and their detention after the gun was found also cannot be characterized as functions exclusively reserved to the state. While these actions are usually performed by police officers, private citizens do occasionally engage in them. The search here was no more than an extension of the detention for shoplifting. It is not unusual for a storekeeper to attempt to discover whether suspected shoplifters have indeed stolen store goods before calling the police. Once the defendants found the gun, detention of the women until the arrival of the police was also not an action outside the realm of common experience. It is not unknown for private citizens to intervene when they see what they believe are crimes being committed

*Id.* at 143; *see also Durante v. Fairlane Town Ctr.*, 201 F. App'x 338 (6th Cir. 2006) (finding that mall security guards were not acting under color of law under public function test when they arrested mall customers for misdemeanor trespass); *Johnson v. LaRabida Children's Hosp.*, 372

F.3d 894 (7th Cir. 2004) (finding that hospital security guards who had authority to patrol and eject people but not to carry guns and who had to call the police if someone became hostile and belligerent were not "state actors").

In the present case, Melick is not a private security officer or private security guard, rather he is a Road Supervisor. As a Road Supervisor, he is responsible for "[s]upervis[ing] the internal aspects of the delivery of public transportation services including, accident reporting, attendance tracking and customer service, in order to ensure safe and efficient operations, schedule reliability, and service quality." Additionally, it is undisputed that Melick does not hold a special licensure or authorization from the City. Neither Melick's responsibilities as a Road Supervisor, nor the contract that references "security" and "safety," endow Melick with plenary police authority. The cases above demonstrate that more is required to confer § 1983 liability, as persons who were authorized to carry guns, institute arrests, and employ deadly force, were not even found to be state actors for purposes of § 1983.

For all the reasons set forth above, Melick's conduct is not "fairly attributable" to the State and therefore Amisi's § 1983 claims against Melick fail.

2. Violation of a constitutional right

Although the Court finds that Melick's conduct was not "fairly attributable" to the State, which effectively ends the Court's inquiry, the Court will assume that Melick is a state actor and analyze whether the conduct at issue deprived Amisi of a constitutional right.

An excessive force claim is evaluated under the substantive due process clause of the Fourteenth Amendment.[6] *See Graham v. Connor*, 490 U.S. 386, 392-93 (1989) (finding that the Supreme Court of the United states have "looked to 'substantive due process,'" when analyzing whether an application of force by law enforcement officers deprived a suspect of liberty without due process of law.); *Truong v. Hassan*, 829 F.3d 627, 630-31 (8th Cir. 2016) ("The only constitutional claim remaining in this action is whether Hassan's actions resulted in a substantive due process violation under the Fourteenth Amendment."). The due process clause provides, in part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. To establish a substantive due process violation, a

---

[6] In her Complaint, Amisi cites the Fourth, Fifth, and Fourteenth Amendments. The Fifth Amendment does not apply in the present case as "[t]he due process clause of the Fifth Amendment applies only to the federal government." *Truong*, 829 F.3d at 631 n.4. Additionally, while the Fourth Amendment is a textually obvious constitutional protection, courts have found that excessive force claims are more appropriately analyzed under the Fourteenth Amendment. *See Graham*, 490 U.S. at 392.

11

plaintiff must show "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007) (internal quotations omitted). In order to reach the second element, the conduct exhibited must be "'so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Truong*, 829 F.3d at 631 (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002). "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005).

Before the Court can evaluate whether the conduct at issue was "conscience shocking," the Court must "first determine the level of culpability the § 1983 plaintiff must prove." *Truong*, 829 F.3d at 631. The plaintiff must prove either deliberate indifference or intent to harm. *Id.*; *see also City. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (finding that the Supreme Court has recognized that deliberate indifference is egregious enough to state a substantive due process claim in certain contexts). The deliberate indifference standard is "sensibly employed only when actual deliberation is practical[.]" *Lewis*, 523 U.S. at 851. Conversely, the intent to harm standard applies "in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation[.]" *Neal v. St. Louis Cty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000).

Here, this was not a dangerous situation. This was a high school girl of small stature who got into a loud conflict with a bigger high school girl who may well have been the initial aggressor. No one was in any zone of danger from these high school girls. No weapons were involved. There was time enough for actual deliberation on the part of Melick. Taking the facts in the light most favorable to Amisi, as the Court must do for this motion, it appears that Melick had time for consideration but lost his temper as is evidenced by his calling Amisi a "black bitch." Melick denied the name calling, but again, Amisi's version of the facts must be adopted for the purpose of ruling on this motion. So here we have a small stature, teenage, high school girl, who was thrown to the ground by a much larger adult male who has wrestling experience and no fear for his personal safety in a take-down outside of the bus stop. Amisi is then held down by her hair for forty seconds and possibly was kneed in the process.

Taking the facts in the light most favorable to Amisi, Melick's conduct does violate one or more fundamental constitutional rights and that conduct was shocking to the contemporary conscience.

*B. Amisi's* Monell *claim against the City—Count III*

In her Compliant, Amisi asserts a *Monell* claim against the City for failing to provide legal oversite of First Transit's General Manager and Melick, and failing to supervise or discipline Melick. Doc. 1 at ¶ 31.

"[A] *Monell* claim is a § 1983 claim *brought against a municipality* that has adopted some policy, custom or practice that allegedly caused a violation of the claimant's constitutional rights." *Rickmyer v. Browne*, 995 F.Supp.2d 989, 1030 (D. Minn. 2014) (emphasis in original); *see also Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978) (finding that a municipality is liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort."); *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007) (finding that the city "may be held liable under section 1983 . . . if one of its customs or policies caused the violation of" the plaintiff's constitutional rights). "It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory." *Ulrich v. Pope Cty.*, 2012 WL 2603210, at *4 (D. Minn. July 5, 2012), *aff'd*, 715 F.3d 1054 (8th Cir. 2013) (citing *Monell*, 436 U.S. at 658). Therefore, in order for a municipality to be held liable under § 1983, "a plaintiff must prove that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" *Id.* (quoting *Monell*, 436 U.S. at 694.). "Without a constitutional violation . . . there can be no § 1983 or *Monell* failure to train municipal liability." *Sanders v. City of Minneapolis Minn.*, 474 F.3d 523, 527 (8th Cir. 2007).

Amisi's *Monell* claim fails. First, it is undisputed that prior to this incident there has not been shown to be a continuing, widespread, or persistent pattern of excessive force being used by SuTran employees that would require or cause an individuals' constitutional rights to be violated, and if there was, the City was unaware of such incidents. *See Ulrich*, 2012 WL 2603210, *4; Doc. 55 at ¶¶31, 33 (31. Prior to this incident, there was not a continuing, widespread, persistent pattern of excessive force being used by SuTran employees. (Meyerson Aff. ¶ 12.); **RESPONSE**: Admit.); (33. To the extent there was a continuing, widespread, persistent pattern of excessive force being used by Sutran employees, the City was unaware of the same. (Trebilcock Aff. ¶ 6; Almond Aff. Ex. A (Trebilcock Depo. 37: 12-15); **RESPONSE**: Admit.)).

13

Additionally, it is undisputed that this was the only incident where a SuTran employee has been accused of excessive force. *See* Doc. 55 at ¶ 32 (32. Indeed, this is the only incident where a SuTran employee has been accused of using excessive force. (Meyerson Aff. ¶ 12.); **RESPONSE**: Admit.)). While Amisi, in her response brief, alleges that there were "dozens of police calls each year for crimes being committed at the bus station[,]" this statement, without admissible evidence to support that claim, is unpersuasive to the Court. *See* Doc. 54 at 4. Thus, for Amisi's § 1983 claim against the City, summary judgment is appropriate.

*C. First Transit's motion for Judgment on the Pleadings*

First Transit argues that it is entitled to judgment on the pleadings because none of the claims in the Complaint are asserted against First Transit, and the fact that SuTran is a subsidiary of First Transit does not make First Transit liable for SuTran or its employees. *See* Doc. 48 at 20; Doc. 59 at 15.

1. Standard of Review—Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED.R.CIV.P. 12(c). Pleadings are closed for the purposes of Rule 12(c) when all required or permitted pleadings have been served and filed. *Doe v. United States,* 419 F.3d 1058, 1061 (9th Cir. 2005); *Johnson v. Dodson Public Schools,* 463 F.Supp.2d 1151, 1156 (D. Mont. 2006); *see also Stands Over Bull v. Bureau of Indian Affairs,* 442, F.Supp. 360, 367 (D. Mont. 1977) (pleadings are not closed until all defendants have answered).

Rule 12(c) motions are analyzed under the same standard as a Rule 12(b)(6) motion. *Ashley Cty, Ark. v. Pfizer, Inc.,* 552 F.3d 659, 665 (8th Cir. 2009). Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (internal citations and quotation marks omitted). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting *Ashcrof v. Iqbal,* 556 U.S. 662, 678 (2009)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief about the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A court will not, however, consider matters outside of the pleadings under 12(c). *See Sasorith v. Detector Electronics Corp.,* 2015 WL 4479034, *1

(D. Minn. 2015); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (finding that the court decides Rule 12(c) motions based upon a review of the pleadings alone, which include, the complaint, the answer, and any documents attached as exhibits).

2. <u>Discussion</u>

Generally, a parent corporation is not liable for the acts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Brown v. Fred's Inc.*, 494 F.3d 736, 739 (8th Cir. 2007) ("There is a strong presumption that a parent company is not the employer of its subsidiary's employees."); *Sandoval v. American Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 795 (8th Cir. 2009) (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987) ("The Fourth Circuit . . . applies 'a strong presumption' that 'when a subsidiary hires employees . . . the subsidiary, not the parent company, is the employer.'"); *Kleweis v. Transport Support, Inc.*, 972 F.Supp. 494, 495 (E.D. Miss. 1997) ("The shareholders of a corporation, including the parent company if the corporation is a wholly-owned subsidiary, are not liable for the injury."). There are exceptions to this general rule, however, which allow the injured party to "pierce the corporate veil" and hold a parent company liable for the acts of its subsidiaries. *See Kleweis*, 972 F.Supp. at 495. "Whether to pierce a corporate veil is a legal determination that, in our circuit, is governed by state law." *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997).

Under South Dakota law, courts have applied a two-part test for determining whether to "pierce the corporate veil." *Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 (S.D. 1994). Courts analyze,

> (1) was there such unity of interest and ownership that the separate personalities of the corporation and its shareholders, officers or directors are indistinct or non-existent; and (2) would adherence to the fiction of separate corporate existence sanction fraud, promote injustice or inequitable consequences or lead to an evasion of legal obligations?

*Id.* In determining whether these prongs are met, courts consider the following six factors:

(1) undercapitalization;

(2) failure to observe corporate formalities;

(3) absence of corporate records;

(4) payment by the corporation of individual obligations;

(5) fraudulent misrepresentation by corporation directors; and

(6) use of the corporation to promote fraud, injustice, or illegalities

*Id.* at 112-13.

In the present case, Amisi seeks to hold First Transit liable for the conduct of its subsidiary, SuTran, and its subsidiary's employee, Melick. However, in Amisi's eight-count Complaint, no claim is asserted specifically against First Transit. In fact, the only allegation against First Transit is that it is SuTran's parent corporation. *See* Doc. 1 at ¶ 3 ("Defendant SuTran, Inc. is a wholly owned subsidiary of First Transit of America."). There are no allegations in the Complaint that would justify piercing the corporate veil. *See Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*, 2015 WL 12866214, at *7 (W.D. Tex. 2015) (granting defendant's motion for judgment on the pleadings because "plaintiff did not allege any veil-piercing theories in its complaint."); *Kuehnemund v. Agrium, Inc.*, 2008 WL 1902065, *1-2 (E.D. Mich. 2008) (adopting the report a recommendation wherein the Magistrate Court granted defendant's motion for judgement on pleadings finding that the plaintiff had not alleged any facts indicating that the Court should pierce the corporate veil and hold the defendant corporation liable for the conduct of its subsidiary); *Brody v. Liffey Van Lines, Inc.*, 2014 WL 2450807, at *3 (S.D.N.Y. 2014) (granting a parent corporation's motion for judgment on the pleadings because "[n]o viable claim [was] asserted against [the parent corporation]" and the court "will not authorize a fishing expedition when plaintiffs have no offered a scintilla of support for piercing the corporate veil between [the subsidiary] and its corporate parent."); *Spiegel v. Carlon*, 2016 WL 5477529, at *9 (N.D. Ill. 2016) (holding that the plaintiff "has not alleged facts sufficient to . . . pierc[e] the corporate veil[,]" and as such the defendant's motion for judgment on the pleadings is granted); *Accurso v. Infra-Red Servs. Inc.*, 23 F.Supp.3d 494, 510-11 (E.D. Penn. 2014) (emphasis in original) (finding that the plaintiff "has not *alleged* sufficient facts to allow his Complaint to give rise to a plausible theory of veil piercing."); *Sunlight Elec. Contracting Co., Inc. v. Turchi*, 2011 WL 4086077, at *16-18 (E.D. Penn. 2011) (finding that "[t]hough [plaintiff] proclaims that its veil-piercing claims succeed in stating a claim, it fails to direct the Court . . . to any specific factual allegations in its compliant that support the[] claims . . . . inspection of the complaint reveals that [plaintiff] has substantiated its veil-piercing claims purely with conclusory statements."); *Schwan v. CNH America LLC*, 2006 WL 1215395, at *23

(D. Neb. 2006) ("I have also ruled that Ford has no alter ego liability based on the actions of its subsidiary because the plaintiffs have no alleged a factual basis for piercing the corporate veil of Ford New Holland, Inc."). As such, First Transit's motion for judgment on the pleadings is granted. As there are no separate counts to dismiss, the Court simply finds that Amisi has not alleged facts sufficient to satisfy the pleadings requirements to pierce the corporate veil. First Transit is thereby dismissed from this action.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1. That Melick's motion for summary judgment for claims arising under 42 U.S.C. § 1983, Counts I and II, is granted. Doc. 46.
2. That the City's motion for summary judgment on the *Monell* claim, Count III, is granted. Doc. 46.
3. That First Transit's motion for judgment on the pleadings is granted. Doc. 46.
4. That Counts IV-VII against Melick and SuTran remain pending for trial.

Dated this 8th day of May, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summer (signature)
  DEPUTY